UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| BRITESTARR HOMES, INC. | Case No. 02-50811(AHWS) |
| Debtor. | |
| BRITESTARR HOMES, INC. | Adversary Proceeding No. 03-05072 |
| Plaintiff, | |
| v. | |
| PIPER RUDNICK LLP | |
| Defendant. | |

DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO STRIKE
UNTIMELY EXPERT DESIGNATIONS

I. BACKGROUND FACTS

Plaintiff Britestarr Homes, Inc. ("Britestarr"), commenced this adversary proceeding on July 31, 2003. The complaint asserts claims of legal malpractice against Piper Rudnick LLP ("Piper"), one of the law firms that formerly represented Britestarr.

The Court's original scheduling order required discovery to end on May 1, 2004, but set no date for expert disclosures. The parties recognized, however, that they would have to disclose and depose experts before the close of discovery. In addition, Britestarr recognized that it could not find and designate its experts sufficiently before its deadline of May 1, 2004, to permit

1

adequate expert discovery. Consequently, the parties informally agreed that Britestarr would designate its experts on April 2, 2004, that Piper would designate its experts on May 16, 2004, and that they would request a brief extension of the discovery deadline to accommodate this schedule.

Britestarr, however, found itself unable to meet the April 2, 2004, expert-designation deadline to which it had agreed. Thus, Britestarr requested and received three additional extensions, first to May 7, 2004, then to May 28, 2004, and finally to June 25, 2004. With Piper's consent, the Court ultimately amended its scheduling order to require Britestarr to disclose its experts by June 25, 2004.

On the designated date, Britestarr named three experts – one on legal ethics, one on the applicable standard of care, and one on Britestarr's claim for damages. In response, Piper began the process of identifying and designating experts of its own.

The Court's scheduling order required Piper to designate its experts on September 10, 2004. But at 5:06 p.m. on the day before Piper's deadline, Britestarr disclosed, for the first time, that it might elicit expert testimony from no fewer than seven "non-retained experts." See Exhibit A (Plaintiff Britestarr's Third Supplemental Answer to Defendant Piper Rudnick's First Set of Interrogatories). The seven consist of Britestarr's current president, three former colleagues of Britestarr's president, two of Britestarr's former lawyers, and the lawyer for Britestarr's former president. Id.

The "supplemental answer" gave only the vaguest of descriptions about what opinions the seven "non-retained experts" might offer. It said, for example, that five of the "experts" "may" testify "concerning the development of energy projects," but it gave almost no detail about what

2

specific "opinions" they might express. Similarly, the answer said that two of the "experts" "may" testify about "what bankruptcy practitioners typically do in certain situations," but it said nothing about what those "certain situations" might be, much less about what specific "opinions" the "experts" might express.

In addition to its lack of detail regarding the specific opinions that the "experts" might express, the answer said nothing about their qualifications to offer their alleged opinions or about the grounds for their opinions. Nor, finally, did the answer disclose any explanation for Britestarr's 11-week delay in identifying them.

To make matters worse, on the afternoon of October 21, 2004, just eight days before the close of all discovery, Britestarr named three more "non-retained expert witnesses," bringing the total of "non-retained experts" to 10. See Exhibit B (Plaintiff Britestarr's Fifth Supplemental Answer to Defendant Piper Rudnick's First Set of Interrogatories). Once again, Britestarr provided a thoroughly uninformative description of what the "experts" might say, it said nothing about their qualifications to offer their undisclosed opinions, and it offered no explanation for its decision not to disclose the "experts" until barely a week before the discovery deadline.

## II. THE APPLICABLE LEGAL STANDARDS

The Court has the discretion to strike Britestarr's untimely designations and to preclude it from eliciting expert testimony from the 10 "non-retained experts." See Softel, Inc. v. Dragon Med. and Scientific Comms., Inc., 118 F.3d 955, 961 (2d Cir. 1997), cert. denied, 523 U.S. 1020 (1998). Because of Britestarr's abject failure to meet the exceedingly liberal expert-designation deadline that Britestarr itself asked the Court to embody in a scheduling order, the Court should

3

exercise its discretion to preclude Britestarr from introducing any expert testimony from any of the "non-retained experts."

"[C]ourts have repeatedly held that the '"automatic sanction" for a violation of [the expert-disclosure requirement] is preclusion.'" Equant Integrations Servs., Inc. v. United Rentals (North America), Inc., 217 F.R.D. 113, 117 (D. Conn. 2003) (quoting Giladi v. Strauch, 2001 WL 388052 (S.D.N.Y. 2001)), at *3. In fact, "[p]reclusion is 'appropriate unless there is substantial justification for the failure, . . . the failure to make disclosure is harmless, or the prejudiced may be remedied." Id. "A finding of bad faith," moreover, "is not required, and delay resulting from neglect is sufficient for preclusion." Empressa Cubana del Tabaco v. Culbro Corp., 213 F.R.D. 151, 159 (S.D.N.Y. 2003) (citing Wolak v. Spucci, 217 F.3d 157, 161 (2d Cir. 2000)).

In its 1997 decision in Softel, the Second Circuit listed the following four factors to consider in determining whether a trial court had exceeded its discretion in excluding an expert on account of a party's failure to comply with a scheduling order:

> (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance.

Id.; see also Wolak v. Spucci, 217 F.3d at 161.

In this case, each of the factors favors the exclusion of Britestarr's belatedly-identified experts. In brief summary, Britestarr has no plausible explanation for its delay in designating those alleged experts; their testimony does not appear to be essential, as Britestarr still has three other experts; the untimely designation has unfairly prejudiced Piper, because Piper had no

4

opportunity to depose them as experts, to discover the basis for their vaguely-articulated "opinions," and to designate counter-experts; and the interests of justice rule out the possibility of a continuance. In these circumstances, the Court should exclude all 10 of Britestarr's "non-retained experts."

A.  Britestarr Has No Explanation for Failing to Comply with the Scheduling Order

Britestarr neither has nor has given any explanation for its failure to designate those experts before its deadline of June 25, 2004. In particular, Britestarr cannot justify its delay by contending that it could not previously have discovered the 10 alleged experts or their alleged opinions.

To the contrary, of the 10 alleged experts, one is Britestarr's own president, Steven Smith. A second is Deirdre Martini, who entered her appearance as Britestarr's counsel of record in this very case. A third is yet another one of Britestarr's many former attorneys, Jeffrey Buss, who also serves as the chair of Britestarr's creditors' committee. Others include three of Mr. Smith's former co-workers (Gad Cohen, Phillip Moor, and Robert Henry), one of whom (Mr. Henry) served as a member of Britestarr's creditors' committee. Still others include three realtors (Stephen Oder, Ross Schneiderman, and Steven Kornspun) who submitted to a Rule 2004 examination in the Britestarr bankruptcy on March 13, 2003, more than four months before Britestarr even filed this case.

On this record, it is perfectly obvious that Britestarr knew full well about of each of these alleged experts well before its own expert-designation deadline of June 25, 2004. Indeed, not only did Britestarr name every one of them as fact witnesses when it served its initial answers to Piper's interrogatories on December 17, 2003 (see Exhibit C), but it had every opportunity to

5

discover their alleged opinions and to designate them as experts in the ensuing six months. Britestarr, therefore, has no conceivable excuse for ignoring the scheduling order and for failing to name these alleged experts until months and months after its deadline had passed. The Court, accordingly, should find that this first factor weighs heavily in Piper's favor.[1]

    B.    In Light of Britestarr's Three Other Experts, the "Non-Retained Experts" Are Not Important to Britestarr's Case

It is not important that Britestarr elicit expert testimony from its "non-retained experts" – if it were, Britestarr would presumably have managed to identify them during the first year of this litigation, before its deadline. Hence, Britestarr's own inaction amply demonstrates the unimportance of whatever opinions the belatedly-named "experts" might have.

In any event, Britestarr already has three properly-designated experts, who, collectively, have charged the estate well over $200,000 in fees. The experts include two law professors and a Ph.D. economist. Britestarr can still attempt to elicit opinions from each of the three experts whom it named within the deadlines set in the Court's scheduling order; the Court, however, should not permit Britestarr to call the 10 alleged "experts" whom it failed to name on time. Softel, 118 F.3d at 962.[2]

---

[1] Not only does Britestarr have no excuse for its failure to make a timely expert designation of its former attorney, Ms. Martini, but it would be illegal for Ms. Martini, a Justice Department employee, to offer expert testimony. 5 C.F.R. 2635.805(a).

[2] In this regard, the Court should note that, according to Britestarr's vague disclosures, at least two of the experts – Ms. Martini and Mr. Buss – appear likely to offer at least some testimony on the standard of care (i.e., on what a "prudent" practitioner would do). If so, that testimony would probably do little more than duplicate that of Professor Kenneth Klee, the expert whom Britestarr named within the deadline set in the scheduling order. Britestarr will certainly suffer no undue harm if it must rely solely on Professor Klee as its expert on the standard of care.

C.   The Untimely Disclosure Prejudiced Piper

Piper has suffered unfair prejudice as a result of the untimely disclosure of 10 alleged experts. Britestarr did not make the first of its belated disclosures until after the close of business on the day before the Court's scheduling order required Piper to disclose its experts. Worse yet, Britestarr did not make the second of its belated disclosures until a mere eight days before the close of all discovery. As a consequence, Piper had no opportunity to designate counter-experts or to prepare its experts to respond to the "opinions," whatever they may be, that Britestarr's "non-retained experts" will supposedly deliver. See Wolak v. Spucci, 217 F.3d at 161 (finding that because defendants should not have expected an expert "where none had been announced," surprise and prejudice resulted from the untimely designation of an expert).

Furthermore, while Piper had the opportunity to depose the "non-retained experts" as fact witnesses, it had no opportunity to explore the poorly articulated "opinions" that Britestarr's untimely disclosures purport to describe. Nor did Piper have the opportunity to examine whether the alleged experts have the "knowledge, skill, experience, training, or education" to testify as to those "opinions," whatever they may turn out to be. Fed. R. Evid. 702. Nor, for that matter, did Piper have the opportunity to examine whether the alleged expert testimony "is based upon sufficient facts and data," whether the testimony "is the product of reliable principles and methods," and whether the alleged experts have "applied the principles and methods reliably to the facts of the case." Id.; see generally Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999); compare Eadie v. McMahon, 199 F.R.D. 45, 47 (D. Conn. 2001) (declining to strike an expert, despite untimely disclosure, if plaintiff could show that defendant had the opportunity to examine the expert about the experiences on which his opinions were based).

In short, because the untimely disclosures will force Piper, at a very late date in the discovery process, to accommodate potentially significant shifts in the theories being offered against it, this factor cuts against Britestarr. Softel, 118 F.3d at 962.

D.   The Court Should Deny a Continuance

"[E]xpeditious management of discovery schedules is especially important in cases of this nature because they require extensive expert involvement over lengthy periods of time." Softel, 119 F.3d at 962. "Therefore, the burden on the trial court of granting a continuance is greater [in this case] than in some other cases." Id.

"When trial courts permit deadline slippage" resulting from the late designation of experts, "trials cannot be scheduled when they ought to be, resulting in the backup of other cases and eventual scheduling chaos as a series of bottlenecks builds." Id. at 962-63. Moreover, in this bankruptcy case, "deadline slippage" will only increase the expense of discovery, including the expenses for the debtor's estate, which has already borne the cost of several dozen depositions and three expensive experts. In these circumstances, the Court should exercise its discretion to deny a continuance. Id.; see also Wolak v. Spucci, 217 F.3d at 161 ("a continuance would have come at the expense of trial efficiency").

III. CONCLUSION

For the foregoing reasons, the Court should strike Britestarr's untimely designation of 10 "non-retained experts.

Respectfully submitted,

*[signature]*
William S. Fish, Jr., ct 05349
e-mail: fish@tylercooper.com
W. Joe Wilson, ct 22292
e-mail: jwilson@tylercooper.com
Tyler Cooper & Alcorn, LLP
CityPlace – 35th Floor
Hartford, CT 06103-3488
Tel: (860) 725-6200
Fax: (860-278-3802

- and -

*[signature]*
James P. Ulwick
Kevin F. Arthur
Kramon & Graham, P.A.
One South Street – Suite 2600
Baltimore, Maryland 21202-3201
(410) 752-6030
e-mail: kfa@kg-law.com

Attorneys for Defendant Piper Rudnick LLP

Dated: October 29, 2004.